**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MARJORIE BAMONT** | **: CIVIL ACTION** |
| | : |
| **v.** | : |
| | : |
| **PENNSYLVANIA SOCIETY FOR THE** | **: NO. 14-6205** |
| **PREVENTION OF CRUELTY TO** | : |
| **ANIMALS, et al.** | : |

**KEARNEY, J.**                                                              **February 16, 2016**

## MEMORANDUM

Pennsylvania's elected representatives recognize a public policy protecting our beloved pets from abusive pet owners by authorizing the Pennsylvania Society for the Prevention of Cruelty to Animals to investigate, stop and, if necessary, obtain a warrant approved by a prosecutor and signed by a judge to seize the at-risk pets and charge the pet owner with animal cruelty. [1] Involving state action, authorities must comply with citizens' constitutional protections against an unlawful search and seizure including conduct beyond the scope of the warrant signed by a judge.

We now address a pet owner's claims the authorities seized her pets after an allegedly brief investigation leading to a search and seizure warrant now challenged by her. The authorities allegedly leaked their upcoming seizure to the media who appeared at the pet owner's home for the seizure. They then kept two of her cats after a court ordered their return. We grant in part and deny in part the authorities' motion to dismiss in the accompanying Order because while many of the *pro se* pet owner's claims do not state constitutional or Pennsylvania state law claims, we find she plead *prima facie* claims for certain Fourth Amendment violations and common law claims of trespass, conversion and invasion of privacy.

## I.    Facts alleged in Complaint

On October 30, 2013, Pennsylvania Society for the Prevention of Cruelty to Animals ("PSPCA") officer Greg Jordan entered Plaintiff Marjorie Bamont's home to talk about her care of her many pets.[2]  During the course of his visit, Jordan "moved two pet cages without plaintiff's consent," which revealed a deceased cat.[3]  Bamont alleges the fourteen (14) other cats living with her had access to clean water and food, and Bamont told Jordan she recently purchased flea medication for the cats.[4]

On October 31, 2013, Jordan prepared an affidavit of probable cause to obtain a search warrant for Bamont's house.[5]  A Philadelphia Assistant District Attorney approved the search warrant and a judge signed it based on Jordan's affidavit.  Defendants Officers Jordan and Leonard Knox, along with PSCPA director George Bengal then broke down her door when she was not home, searched her home and seized all fourteen (14) of Bamont's cats.  Further, Jordan, Bengal, and Knox permitted the media onto some part of her property during the search.[6]  When Bamont arrived home, they seized her dog from her car.[7]  When Bamont asked why Defendants seized her pets, Jordan said "Because we're the Big Bad Wolf, and we can."[8]

Bamont underwent an emergency involuntary mental health exam and spent several days in a hospital.[9]  Defendant officers charged her with animal cruelty as to nine (9) of Bamont's fifteen (15) animals, but seized all her pets and she alleges none of her animals have been returned as yet.[10]

On December 18, 2013, Bamont pled no contest to charges of Cruelty to Animals related to nine (9) of her fourteen (14) cats.  The state court denied Bamont's later attempt to withdraw her no contest plea and the Pennsylvania Superior Court denied her appeal as untimely.

2

On April 10, 2014, the Court of Common Pleas ordered the PSPCA to return two of her cats.[11] Defendants did not return her cats by September 1, 2014.[12]

Bamont then sued the PSPCA and the three officers: Defendant George Bengal ("Bengal") is the PSPCA Director of Law Enforcement, defendants Greg Jordan ("Jordan") and Leonard Knox ("Knox") (collectively "the officers") are PSPCA officers or Humane Society Police Officers authorized to enforce the animal cruelty law.

## II.    Analysis

Bamont claims: Defendants violated her civil rights under 42 U.S.C. § 1983;[13]   the PSCPA failed to train and properly supervise its officers; negligence *per se*; trespass; conversion; and, intentional infliction of emotional distress.   Defendants move to dismiss her *pro se* complaint arguing: (1) the constitutional claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because any attempt to show the October 31, 2013 search of her home is unreasonable implies her conviction is invalid; (2) the officers are entitled to qualified immunity on the constitutional claims;[14] (3) her state conviction collaterally estops her from alleging invalidity of the warrant for the purposes of her state law claims; and, (4) she fails to state a claim for negligence *per se*, trespass, conversion and intentional infliction of emotional distress.[15]

### A.    Bamont's constitutional claims are not barred by *Heck v. Humphrey*.

Defendants move to dismiss Bamont's constitutional claims under the United States Supreme Court's holding in *Heck*:

> to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to

3

a conviction or sentences that has *not* been so invalidated is not cognizable under § 1983.[16]

We now consider whether "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . ."[17] *Heck* should not be treated as a categorical bar to subsequent civil rights actions.[18]   The Supreme Court in footnote seven (7) to its *Heck* opinion cited an example of an appropriate § 1983 claim: "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction."[19] This conclusion follows from the reasoning "doctrines like independent source and inevitable discovery, and especially harmless error" make it less likely a § 1983 unreasonable search claim would necessarily imply that plaintiff's conviction was unlawful.[20] As such, we question whether Bamont's constitutional claims necessarily imply the invalidity of her outstanding conviction based on her no contest plea. If so, the Supreme Court's *Heck* holding bars her § 1983 claims.[21]   Defendants argue we must broadly interpret *Heck* because Bamont's attack on the validity of the search warrant, if successful, would essentially "make her not guilty."[22]   Defendants argue Bamont is contesting her conviction by pleading the search warrant contained deliberate misrepresentations and material omissions.[23]   Bamont disagrees by citing to footnote seven (7) in *Heck*.[24]

We find *Heck* does not apply to bar Bamont's constitutional claims.   Defendants simply recite the *Heck* rule.   Critically, they fail to establish exactly which aspect of her conviction would necessarily be invalidated by her success on these claims.   To be guilty of a charge of cruelty to animals, the accused must be found to have wantonly or cruelly abused an animal, or have neglected an animal to which the accused owed a duty of care.[25] A jury finding the warrant is not supported by probable cause does not *necessarily* imply Bamont owed no duty to her

4

animals, she did not abuse or neglect them, or she was not wanton or cruel in doing so. Bamont's claims of providing food and clean water on the day of Jordan's visit does not mean there was food or clean water on other days, or the animals were not malnourished. Evidence of Bamont's crime was available through other sources and could be independently confirmed. For example, Jordan's affidavit of probable cause details receiving a complaint of unsanitary conditions at Bamont's residence.[26]   Challenging the constitutionality of the search and seizure on October 31, 2013 does not necessarily imply she should not be guilty of animal cruelty.

Bamont's injuries also do not arise from her conviction but rather from being subject to involuntary mental health examination, hospitalization, embarrassment, humiliation, and emotional distress. Accordingly, *Heck* does not bar Bamont's constitutional claims.

### B.   Are Bengal, Jordan, and Knox entitled to qualified immunity?

As humane society police officers, Bengal, Jordan, and Knox "have the same powers to initiate criminal proceedings provided for police officers by the Pennsylvania Rules of Criminal Procedure."[27]   The question of whether humane society police officers are entitled to qualified immunity has not been answered definitively by our Court of Appeals.  In *Kauffman v. PSPCA*, our distinguished colleague Judge Dalzell determined humane society police officers are entitled to qualified immunity when working under "close official supervision" of the approving assistant district attorney and magistrate judge.[28]  "Close official supervision exists when a government actor directly inspects or directs a private individual's behavior."[29]  We are persuaded by Judge Dalzell and find Bengal, Jordan, and Knox may assert a qualified immunity defense.

The availability of a qualified immunity defense does not equal entitlement to its protection. Defendants cite *Kauffman* as granting them qualified immunity without providing any further analysis.[30]  Judge Dalzell's opinion in  *Kauffman* did not grant humane society police

officers blanket qualified immunity without first analyzing qualified immunity under *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).[31]   Given the Supreme Court's repeated emphasis on "'the importance of resolving immunity questions at the earliest possible stage in litigation'", we analyze whether the individual Defendants are entitled to qualified immunity.[32]

Under *Saucier*, we decide whether: 1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" and, 2) "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."[33]   This sequence is not obligatory: "The judges of the district courts and courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[34]   Despite Defendants providing no argument for how we should proceed under *Saucier*, we will address qualified immunity for each constitutional claim.

### i.     *Bamont alleges facts relating to the probable cause for the warrant which, taken as true, plead a Fourth Amendment claim against Jordan.*

Bamont alleges the search warrant is not based on probable cause.   A § 1983 plaintiff may establish a Fourth Amendment violation in procuring a search warrant by showing: 1) the officer made false statements or omissions in the affidavit either deliberately or with reckless disregard for the truth; and 2) those misstatements or omissions were material to the judicial officer's finding of probable cause.[35]   In deciding whether statements are made with "reckless disregard for the truth", we decide whether when "viewing all of the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported."[36]   Omissions are made with reckless disregard if "an officer withholds a fact in his ken that any reasonable person would have known that this

6

was the kind of thing the judge would wish to know."[37]   If evidence of either omissions or assertions made knowingly, or with reckless disregard for the truth is shown "we turn to the next step of reconstructive surgery . . . and determine whether the statements and omissions made with reckless disregard of the truth were 'material, or necessary, to the finding of probable cause.'"[38]   If after deleting the false statements and adding the omitted facts there is no probable cause, the warrant is deemed invalid.[39]

Bamont alleges Jordan "knowingly and deliberately, or with reckless disregard for the truth, made material statements in his affidavit of probable cause."[40]   Bamont alleges Jordan falsely stated he observed a cat lying on a deceased cat.[41]   Bamont alleges Jordan falsely stated the cats had not been to the veterinarian or received flea treatment in over one year.[42]   Without these false misrepresentations, Bamont contends the magistrate would not have issued the search warrant.[43]   Further, Bamont complains Jordan deliberately omitted material facts in his affidavit of probable cause.[44]   Bamont alleges Jordan omitted the fact the cats had access to "several bowls of food and clean water," there "was no urine or feces on any floors" and "the cats' several litter boxes were clean."[45]   Additionally, Bamont avers she told Jordan she purchased "Advantage" flea medication and applied it to her cats, and she had taken the cats to the veterinarian within the past year.[46]

Defendants argue only these claims are barred by *Heck* or Defendants are entitled to qualified immunity.   Presumably, Jordan will dispute these claims after discovery.   But construing her alleged facts as true, as we must at this preliminary stage, we find Bamont alleges sufficient facts of a Fourth Amendment violation.[47]   Bamont alleges the misrepresentations, when removed, and the omissions, when added, could lead a judge to find a lack of probable cause for the search warrant.   This is presently sufficient.[48]   We recognize whether probable

7

cause existed is typically a question of fact for the jury, but a court may decide as a matter of law probable cause exists when the facts are viewed in the light most favorable to a plaintiff.[49] Thus, we reserve our right to make a probable cause determination based on a more fulsome record.

Having established a plausible constitutional violation, we must determine whether this Fourth Amendment right was "clearly established" by October 31, 2013. "If a police officer submits an affidavit containing statements he knows to be false or would know are false if he had not recklessly disregarded the truth, the officer obviously fails to observe a right that was clearly established."[50] Based on our analysis, Defendants are not entitled to qualified immunity for Bamont's claims in Counts I & II.

### ii. *Bamont does not allege facts relating to the District Attorney's signature which, taken as true, plead a Fourth Amendment claim against Jordan, Bengal and Knox.*

In Count III, Bamont argues the search is illegal because an Assistant District Attorney approved the warrant and not Seth Williams, the Philadelphia District Attorney. Bamont cites 18 Pa. Cons. Stat. § 3710 arguing the warrant is void:[51]

Notwithstanding contrary provisions of 18 Pa.C.S. § 5511(1) (relating to cruelty to animals) and in addition to the requirements of existing law, all search warrant applications filed in connection with alleged violations of cruelty to animals laws must have the approval of the district attorney in the county of the alleged offense prior to filing.

Defendants argue adopting Bamont's approach would lead to the absurd result of the District Attorney having to personally approve every search warrant submitted under § 3710.[52] Defendants contend county district attorneys may delegate approval of a search warrant under Pennsylvania Rule of Criminal Procedure 202 providing a "local option" for a district attorney to

require approval of all search warrants by "an attorney for the Commonwealth" which includes assistant district attorneys.[53]

Bamont suggests a plain reading of § 3710 requires search warrants must be approved by *the* district attorney, rather than an assistant district attorney or other lawyer.[54] She contends interpreting the statute as requiring the lead district attorney's approval does not lead to an absurd result because his duty under the statute is non-delegable.[55]

Without delving deep into the chasm of statutory interpretation, we find Bamont fails to allege a constitutional violation. Bamont has not alleged facts which explain how obtaining an assistant district attorney's signature, as opposed to the lead district attorney's, violated her Fourth Amendment right or any law of the United States.[56] In *Kitko*, a § 1983 plaintiff argued for municipal liability where a magistrate judge violated his constitutional rights by not requiring the district attorney in the county of execution to approve a search warrant prior to its execution.[57] The district court discredited this argument finding such a procedural deficiency stems from violations of local rules of criminal procedure and state law.[58] And because "violations of state law and local rules do not provide a basis for a claim under 42 U.S.C. § 1983, unless they also violate the Fourth Amendment, and because the sole remaining claim of Plaintiff's Amended Complaint states a claim for relief under § 1983 for a violation of Plaintiff's Fourth Amendment rights, Plaintiff is not entitled to any form of relief as a result of these alleged wrongs."[59] In affirming, our Court of Appeals stated violations of procedural rules or state law had no "constitutional significance."[60]

Jordan's alleged procedural defect did not violate Bamont's constitutional rights.[61]  A Philadelphia assistant district attorney approved the search warrant executed at Bamont's home. While this signature technically violated § 3710, we fail to see constitutional significance. We

9

cannot find Bamont's alleged constitutional violation could have been cured by District Attorney Williams approving the warrant himself. Because the search warrant "must still be founded upon probable cause as determined by a district magistrate judge", the Defendants did not infringe Bamont's Fourth Amendment rights by having the assistant district attorney approve the warrant.[62]  Such a procedural defect did not cause a violation of a right secured by the Constitution and cannot sustain a § 1983 claim. Bamont may, and in fact is, challenging the basis of probable cause through her attack on Jordan's affidavit of probable cause. Bamont is entitled to relief, if successful, on those claims but not on this one. We accordingly dismiss Count III. For the same reasons, we will dismiss the supervisory liability and *Monell* claims against Bengal and the PSPCA in Counts VI and VIII to the extent they rely on a violation of § 3710.

### iii. *Bamont alleges facts relating to media presence which, taken as true, plead Fourth Amendment claims against Jordan, Bengal and Knox.*

In Count IV, Bamont alleges Jordan, Bengal, and Knox exceeded the scope of the warrant by allowing members of the news media onto her property while executing the warrant.[63]  Police exceed the scope of a warrant when they act outside of the purposes for which the warrant was issued.[64]  In *Wilson*, the United States Supreme Court held the police exceeded the scope of a warrant to search plaintiff's home when they allowed a news reporter to enter the home for purposes unrelated to the search.[65]  But the Court then granted the defendants qualified immunity because the law was not clearly established at the time of the search.[66]

Bamont correctly argues the United States Supreme Court found a Fourth Amendment violation when officers bring "members of the media or other third parties into a home during the execution of a warrant when the presence of the third parties in the home was not in aid of the execution of the warrant."[67]  We find Bamont alleges facts plausibly evidencing a Fourth

10

Amendment violation by Jordan, Bengal and Knox, subject to discovery as to which one, if any, invited the media onto her property. Bamont will need to present more facts to present this theory to the jury.[68] But for now the allegations suffice.[69]

Having found a plausible constitutional violation, we turn to whether this right is "clearly established."[70] Here, *Wilson* and its progeny make clear allowing media or a third party to enter Bamont's home during execution of a warrant violates a clearly established right under the Fourth Amendment. There is a question of fact as to the media's location. But for now, Jordan, Bengal and Knox are not presently entitled to qualified immunity on this claim.

### iv. *Bamont does not allege facts relating to the judge's issuing a warrant which, if taken as true, plead a Fourth Amendment claim against Jordan, Bengal and Knox.*

In Count V, Bamont alleges Jordan, Bengal and Knox violated the Fourth Amendment by seizing all fifteen (15) of her animals when charges involved only nine (9) of her pets.[71] She cites 18 Pa.C.S. § 5511 (l) authorizing seizure of "evidence of the violation including, but not limited to, the animals which were the subject of the violation."[72] The plain language of Section 5511(l) regulates the behavior of the "issuing authority" providing the police with a warrant: in this case, the magistrate judge.[73] None of the Defendants could have violated Section 5511(l). Bamont's claim is unsustainable and Count V is dismissed with prejudice.[74]

### v. *Bamont does not allege facts relating to substantive due process which, if taken as true, plead a Fifth Amendment claim against Jordan, Bengal and Knox.*

In Count VII, Bamont claims Jordan, Bengal and Knox deprived her of a Fifth Amendment substantive due process right.[75] Defendants observantly argue the Fifth Amendment only applies to acts of the federal government and Bamont's claim should be dismissed.[76] Defendants are correct.[77]

11

As Plaintiff is *pro se,* we will liberally construe her claim as brought under the Fourteenth Amendment applicable to state action.[78]     Construing her claim under the Fourteenth Amendment, Bamont's claim is dismissed under the "more specific-provision rule." "Noting its 'reluctan[ce] to expand the concept of substantive due process,' the Supreme Court established the 'more specific-provision rule.'"[79]   "Under this rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'"[80]

In *Betts*, our Court of Appeals applied the more specific-provision rule to foreclose a substantive due process claim premised on the same conduct challenged under the Eighth Amendment.[81]  Much like the plaintiff in *Betts*, Bamont pleads a substantive due process claim without pleading facts aside from those in her Fourth Amendment search and seizure claims. Accordingly, Bamont's substantive due process claim is foreclosed by the more specific-provision rule.

## C.   Bamont does not plead *Monell* supervisory liability.

In Counts VI and VIII, Bamont seeks to impose supervisory liability upon the PSCPA and Bengal under the Fourth Amendment. She does not plead these claims.

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."[82]  To plead a failure to train claim, Bamont must show: "(1) the failure to train amounted to deliberate indifference to the rights of the persons with whom the officer came in contact; and (2) the municipality's policy actually caused a constitutional injury." [83]" '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal

12

actor disregarded a known or obvious consequence of his action."[84]   Moreover, it is not enough for a plaintiff to allege "an injury could have been avoided by more or better training—the deficiency identified by a plaintiff must be closely related to the ultimate injury."[85]

An individual with supervisory authority, such as Bengal, may be liable under two distinct theories.  Under the first theory, "policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'"[86] Under the second theory, a supervisor may be liable "if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."[87]

In Counts VI and VIII, Bamont pleads supervisory liability and *Monell* claims against Bengal and the PSPCA.[88]   With regard to Bengal, Bamont alleges "despite his actual or constructive knowledge that the search warrant application was not approved by District Attorney Seth Williams, as required by Pennsylvania law, thereby rendering the search warrant invalid, and that only nine of the plaintiff's animals were the subject of alleged [sic] animal cruelty violations, defendant Bengal personally participated in the search of the plaintiff's home and the seizure of all of the plaintiff's animals and/or acquiesced in defendants Jordan and Knox doing the same."[89]   Bamont then alleges the PSPCA failed to train its officers "in regard to investigating alleged animal cruelty violations, including procuring and executing search warrants in a manner that does not violate constitutional rights."[90]   Specifically, the PSPCA permitted its officers to obtain warrants without approval of the district attorney.[91]   Moreover, the PSPCA allowed its officers to seize animals not subject to animal cruelty violations.[92]   These

"customs or practices" amounted to "deliberate indifference to the constitutional rights of others."[93]

Initially, we note we are dismissing any claims under *Monell* or supervisory liability premised on Bamont's allegations regarding a need for District Attorney Seth Williams' approval.[94]   Likewise, we dismiss Bamont's Count VI's supervisory liability claim against Bengal to the extent she alleges he is liable for the Defendants only bringing animal cruelty charges with regards to nine (9) cats despite all of the cats being seized.  We interpret this claim to be premised on the same allegations supporting Count V and because the statute at issue does not regulate Bengal's conduct or his subordinate's conduct, he cannot be held liable for his statute violation.  As those two claims form the basis of Bamont's supervisory liability claim, we dismiss this claim under Count VI with prejudice as Bamont cannot allege facts supporting this claim.

As to the PSPCA, we similarly reject any attempt to impose liability based on violations of § 3710 or § 5511(l).  Bamont further alleges "the SPCA failed to train or supervise their Humane Society Police Officers (HSPO) in regard to investigating alleged animal cruelty violations, including procuring and executing search warrants in a manner that does not violate constitutional rights."[95]  Yet, Bamont fails to plead a "pattern of constitutional violations" which is "ordinarily necessary" to demonstrate deliberate indifference for purposes of a failure to train.[96][97]  Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" at the motion to dismiss stage.[98]  Again, deliberate indifference is a "stringent standard of fault" and Bamont's conclusory allegations regarding the PSPCA's inadequate training is insufficient to defend Defendants' motion to dismiss.[99]  We dismiss Count VIII for failure to train.

14

### D.    Bamont's state law claims.

Bamont claims the officers' October 31, 2013 actions constitute negligence *per se*, trespass, conversion, invasion of privacy, and intentional infliction of emotional distress under Pennsylvania law.[100] Defendants argue: the negligence *per se* claims fail as they did not violate a statute; Bamont is estopped from bringing her trespass and invasion of privacy claims; the conversion claim fails because they returned the two (2) cats by September 1, 2014 and Bamont has no damages; and, their conduct does not rise to the requisite level of outrageousness for a claim of intentional infliction of emotional distress. We dismiss Bamont's negligence *per se* claims, as well as her intentional infliction of emotional distress claim. Subject to further discovery, Defendants' motion is denied as to Bamont's conversion, trespass and invasion of privacy claims.

#### i.    *Bamont cannot state a claim for negligence per se.*

In Counts IX and X, Bamont alleges Defendants engaged in negligence *per se* by violating 22 Pa. Cons. Stat. § 3710 (district attorney signature) and 18 Pa. Cons. Stat. § 5511 (issuing authority liability). Bamont cannot state a claim under either of these statutes.

"Under the doctrine of negligence *per se*, a violation of a statute may be grounds for finding that a defendant is *per se* liable."[101] To state a claim, Bamont must show: (1) the statute or regulation clearly applies to the conduct of the defendant; (2) the defendant violated the statute or regulation; (3) the violation of the statute proximately caused the plaintiff's injuries; and (4) the statute's purpose is, at least in part, to protect the interest of the plaintiff individually, as opposed to the public.[102]

Bamont fails to plead causation. Bamont's negligence allegations mirror her Fourth Amendment claims. While it is unclear whether a private cause of action exists under the

15

statutory scheme or underlying policies of § 3710, Bamont's claim is precluded without reaching this question. Assuming, *arguendo*, the statutory scheme could serve as the basis for negligence *per se*, Bamont cannot recover for negligence *per* se because she cannot plead the statutory violation caused injury. Invalidity of the warrant is not enough and she must at least plead her injuries would not have been sustained if the officers complied with the statute. By alleging the judge issued the warrant due to Jordan's false and misleading statements, she fails to plead the result would be any different if District Attorney Seth Williams had been required to approve the search warrant.

Bengal, Jordan, and Knox did not violate § 5511(l) by seizing all of Bamont's animals, while subsequently only filing charges with regard to nine (9) of them because this subsection only applies to conduct of the judge as the issuing authority.[103] We dismiss Counts IX and X.

### ii. Bamont states a claim for trespass arising from the media's presence.

In Count XI, Bamont claims all Defendants are liable for compensatory and punitive damages for trespass. She has sufficiently pled facts to allow her to proceed into discovery as the search and seizure may have been unlawful because Jordan, Bengal and Knox were on her property with a possibly invalid search warrant. Of possibly greater concern, Bamont plausibly alleges Defendants alerted news media who trespassed without her consent. In Pennsylvania "one who authorizes or directs another to commit an act which constitutes a trespass to another's land is himself liable as a trespasser to the same extent as if the trespass were committed directly by himself."[104]

Although Bamont has not pled the factual circumstances by which members of the news media arrived at her property, she pled Defendants either permitted or brought the media onto her property. Bamont may be able to demonstrate the police were substantially certain that the

16

news-media would enter the property. Accordingly, taking her facts as pled, the Defendants Jordan, Bengal and Knox may be liable for trespass.

Because Bamont pleads Defendants and the invited media entered her property without a valid warrant, she has pled trespass and, at this preliminary stage, the PSCPA may be liable under respondeat superior.

### iii.    *Bamont states a claim for invasion of privacy.*

In Count XII, Bamont claims intrusion upon seclusion against all Defendants. The Pennsylvania Supreme Court has not yet adopted the definition of intrusion upon seclusion from the *Restatement (Second) of Torts* but has relied on the definition to analyze claims.[105]    The Restatement provides: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."[106]    The intrusion must be intentional, in that the actor "believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act."[107]

Defendants' arguments against this claim are not persuasive. They argue the claim should be dismissed because "it in essence attacks the facts that a search warrant was conducted at her home."[108]    They further argue Bamont consented to their presence on her property.[109] Finally, because Bamont was convicted of the crime which was "the subject of the search warrant", she cannot now challenge the warrant.[110]

We already rejected Defendant's argument *Heck* bars this claim because she is attempting to challenge her conviction. Next, Bamont did not consent to their presence. Paragraph 30 of the complaint, cited by Defendants, reads "Defendant Jordan also omitted the fact that despite being permitted into the plaintiff's home . . . ." This paragraph references the October 30, 2013

17

visit by Jordan rather than the execution of the search warrant the next day. We find Bamont pled sufficient facts for intrusion upon seclusion at this preliminary stage. As authorized agents, and subject to further discovery, the PSCPA remains potentially liable on this claim against Jordan, Bengal and Knox.

### iv.   Bamont states a conversion claim.

In Count XIII, Bamont alleges the PSPCA converted two (2) of her cats when it did not return them to her after an April 10, 2014 court order.[111] As of September 1, 2014, the PSCPA had not returned the two cats.[112] "Conversion is the deprivation of another's right to property in, or use in possession of, a chattel, without the owner's consent and without lawful justification."[113] Pets are considered property under Pennsylvania law and are thus proper subjects of a conversion claim.[114]

The PSPCA argues the individual Defendants obtained the cats with lawful justification under a valid search warrant and thus, no conversion claim can stand. True enough. However, when the court ordered return of two cats on April 10, 2014, the PSPCA no longer had lawful justification to retain control over the two cats. They did, and thus Bamont pled a conversion claim.[115]

### v.   Bamont does not sufficiently plead intentional infliction of emotional distress ("IIED")

In Count XIV, Bamont claims Defendants caused her emotional distress. We dismiss this claim as Bamont does not plead the requisite level of outrageous conduct by Defendants, although Jordan's alleged comments concerning being the "Bad Wolf" are close.

As a threshold matter, the Pennsylvania Supreme Court has not yet recognized a cause of action for intentional infliction of emotional distress (IIED).[116] In *Taylor*, the Pennsylvania Supreme Court cited to Restatement (Second) of Torts § 46 as "setting forth the minimum

18

elements necessary to sustain such a cause of action."[117]  Our Court of Appeals, district courts within this Circuit, and the Pennsylvania Superior Court have recognized this claim.[118]

A plaintiff seeking to recover under an IIED claim must "demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff."[119]  A plaintiff must suffer some resulting harm from the defendant's outrageous conduct.[120]  "Liability on an intentional infliction of emotional distress claim 'has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"[121]  Additionally, the "existence of the alleged emotional distress must be supported by competent medical evidence."[122]

At this early stage, we "decide as an initial matter whether the conduct at issue can reasonably be regarded as sufficiently extreme to constitute 'outrageousness' as matter of law."[123]  This tort is "reserved for the most extreme ranges of behavior."[124]

Bamont did not plead Defendants' actions amounted to the outrageousness required to sustain an IIED claim.  While Jordan's "Big Bad Wolf" comment, if true, is rude and unprofessional, it does not rise to the requisite level of outrageousness.[125]  Further, none of the Defendants' other conduct meets the threshold.  Accordingly, we dismiss this claim without prejudice for Bamont to supplement her complaint after discovery with facts of outrageous conduct, if they exist, sufficient to support this emotional distress claim.

### III.    Conclusion

We applaud the PSPCA's often overlooked and under-appreciated efforts to protect our beloved pets.  As with any person acting with police power, the PSPCA officers must strictly follow the Fourth Amendment requirements and comply with court orders.  Mrs. Bamont

sufficiently pleads Fourth Amendment and Pennsylvania common law claims arising from the PSPCA's officers' representations to the judge to obtain a search warrant, conduct while executing the search warrant and refusal to return her cats after a court order. These claims will now be tested in discovery and, if warranted, before a jury.

---

[1] Under 18 Pa. Cons. Stat. § 5511(l), "[a]n agent of any society or association for the prevention of cruelty to animals, incorporated under the laws of the Commonwealth, shall have the same powers to initiate criminal proceedings provided for police officers by the Pennsylvania Rules of Criminal Procedure." (ECF Doc. No. 3, at ¶¶ 2-10).

[2] (*Id.* at ¶ 30.)

[3] (*Id.* at ¶ 30.)

[4] (*Id.* at ¶¶ 28-29.)

[5] (*Id.* at ¶11).

[6] (*Id.* at ¶¶ 13, 42.)

[7] (*Id.* at ¶ 15).

[8] (*Id.* at ¶ 16).

[9] (*Id.* at ¶ 17).

[10] (*Id.* at ¶ 18).

[11] (*Id.* at ¶ 93.)

[12] Id.

[13] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

[14] Defendants only argue that they are entitled to qualified immunity on the constitutional claims; they do not argue qualified immunity should apply to preclude Bamont's state law claims.

[15] A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for a failure to state a claim upon which relief can be granted examines the sufficiency of the complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Federal Rule of Civil Procedure 8(a)(2) requires plaintiffs set forth "a short and plain statement of the claim," which gives the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Connelly v. Lane Construction Corp.*, —F.3d— , 2016 WL 106159, *3 (3d Cir. Jan. 11, 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (alteration in original). The complaint need not contain "detailed factual allegations" but rather "sufficient factual matter to show that the claim is facially plausible, thus enabling the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (internal quotations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir.2010) (alteration in the original) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993)). We must "accept all the factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp.*, 643 F.3d at 84 (alteration in original) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002). In the end, we will dismiss a complaint if the factual allegations in the complaint are not sufficient " 'to raise a right to relief above the speculative level.' " *West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank,* 712 F.3d 165, 169 (3d Cir.2013) (quoting *Twombly,* 550 U.S. at 555).

[16] *Id.* at 486-87.

[17] *Id.* at 487.

[18] *Id.* at n.7; *Sanders v. Downs*, 420 F. App'x 175, 179 (3d Cir. 2011) ("*Heck* does not typically bar actions for Fourth Amendment violations . . . .")

[19] *Id.*

[20] *Id.*

[21] *See Gibson v. Superintendent, N.J. Dep't of Law & Pub. Safety*, 411 F.3d 427, 450 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181, 188 (3d Cir. 2010).

[22] (ECF Doc. No. 10, at 13.)

[23] (*Id.*)

[24] (ECF Doc. No. 11, at 1.)

[25] 18 Pa. Cons. Stat. § 5511(c)(1).

[26] (ECF Doc. No. 10, at Ex. B.)

[27] 18 Pa. Cons. Stat. § 5511(i).

[28] *Kauffman v. Pennsylvania Society for the Prevention of Cruelty to Animals,* 766 F. Supp. 2d 555, 568 (E.D. Pa. 2011).

[29] *Id.*

[30] (ECF Doc. No. 10, at 16-17.)

[31] 766 F. Supp. 2d at 568-70.

[32] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

[33] *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

[34] *Pearson*, 555 U.S. at 236.

[35] *Sherwood*, 113 F.3d at 399 (citing *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)).

[36] *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (citing *United States v. Clapp*, 46 F.3d 795, 801 n.6 (8th Cir. 1995)).

[37] *Id.* at 787 (internal quotation omitted).

[38] *Id.* at 790 (citing *Sherwood*, 113 F.3d at 399).

[39] *Franks*, 438 U.S. at 156.

[40] (ECF Doc. No. 3, at ¶ 20.)

[41] (*Id.* at ¶ 21.)

[42] (*Id.*)

[43] (*Id.* at ¶ 22.)

[44] (*Id.* at ¶¶ 27-30.)

[45] (*Id.* at ¶¶ 28-29.)

[46] (*Id.* at ¶ 29.)

[47] *Allen v. Pennsylvania Soc. for Prevention of Cruelty to Animals*, 488 F. Supp. 2d 450, 464 (M.D. Pa. 2007) (denying motion to dismiss Fourth Amendment claim alleging invalid search warrant).

[48] *See id.* ("At this early stage of the litigation, the court is unable to assess [Defendant's] mental state, evaluate her alleged misstatements and omissions, determine what effect, if any, they had on the validity of the warrant and constitutionality of the subsequent search.").

[49] *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788-89 (3d Cir. 2000).

[50] *Lippay v. Christos*, 996 F.2d 1490, 1504 (3d Cir. 1993), *abrogated on other grounds, Albright v. Oliver*, 510 U.S. 266 (1994) (citing *Malley v. Briggs*, 475 U.S. 335, 345 (1986)).

[51] (ECF Doc. No. 3, at ¶¶ 36-37.)

[52] (ECF Doc. No. 14, at 3-4)

[53] (*Id.* at 4-6.)

[54] (ECF Doc. No. 19)

[55] (*Id.*)

[56] *See Kitko v. Young*, No. 10-189, 2013 WL 5308016, *8 (W.D. Pa. Sept. 20, 2013), *aff'd* 575 F. App'x 21 (3d Cir. 2014).

[57] *Id.* at *7.

[58] *Id.* at *8.

[59] *Id.*

[60] *Kitko*, 575 F. App'x at 26.

[61] *See West v. Atkins*, 487 U.S. 42, 48 (1988).

[62] *Freeman v. Murray*, 163 F. Supp. 2d 478, 494 (M.D. Pa. 2001) (finding challenge to probable cause proper avenue for § 1983 challenge rather than procedural defect in obtaining district attorney approval).

[63] (ECF Doc. No. 3, at ¶ 42.)

[64] *Arizona v. Hicks*, 480 U.S. 321, 325 (1987); *see also Wilson v. Layne*, 526 U.S. 603, 611-12 (1999); *Allen v. Pennsylvania Soc. for Prevention of Cruelty to Animals*, 488 F. Supp. 2d 450, 465 (M.D. Pa. 2007) (holding that humane society police officers exceeded the scope of a warrant by allowing twenty five other individuals to be on the property during seizure of animals).

[65] 526 U.S. at 611-14.

[66] *Id.* at 617-18.

[67] *Wilson*, 526 U.S. at 614.

[68] *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) ("[S]ummary judgment is essentially put up or shut up time . . . ."); *Allen*, 488 F. Supp. 2d at 564.

[69] The inquiry at summary judgment may become whether any media members of third parties were within the home's "curtilage" in accordance with the factors enumerated in *United States v. Dunn.* 480 U.S. 294, 300 (1987). These factors are: 1) the proximity of the area at issue to the home; 2) whether the area is included within an enclosure surrounding the home; 3) the nature of the uses to which the area is put; and 4) the steps taken by the resident to protect the area from observation. *Id.* at 301. Here, we have no indication as to where the media members were located. It is possible the media were only in the front yard, which may not be a Fourth Amendment violation. *See United States v. Duenas*, 691 F.3d 1070, 1081 (9th Cir. 2012) (affirming district court finding media members in front yard did not violate Fourth Amendment). However, if media members were in the house or had somehow gained access to the rear yard, it is possibly a Fourth Amendment violation. *See id.* (finding journalists escorted by police beyond front yard may have constituted Fourth Amendment violation).

[70] *Pearson*, 555 U.S. at 816.

[71] (ECF Doc. No. 3, at ¶ 47-48.)

[72] 18 Pa. Cons. Stat. § 5511(l).

[73] In the Pennsylvania Rules of Criminal Procedure, an "Issuing Authority is any public official having the power and authority of a magistrate, a Philadelphia arraignment court magistrate, or a magisterial district judge." Pa. R. Crim. P. 103.

[74] Defendants contend this claim is more properly construed as a due process claim under the Fourteenth Amendment. If so, Defendants argue the claim should be dismissed because Bamont failed to take advantage of her post-deprivation remedies under Pa.R.Crim.P. 588. (*Id.* at 15-16.) Because we find Bamont's Fourth Amendment claim in Count V is insufficient, we need not address this argument.

[75] (ECF Doc. No. 3, at ¶¶ 58-61.)

[76] (ECF Doc. No. 10, at 14-15.)

[77] *See Pub. Utils. Comm'n v. Pollak*, 343 U.S. 451, 461 (1952).

[78] *Higgs v. Attorney Gen. of the United States*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established.").

[79] *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *Cnty of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998)).

[80] *Id.* (citing *United States v. Lanier*, 520 U.S. 259, 272 n.2 (1997)).

[81] *Id.*

[82] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 412 (1989).

[83] *Moser v. Pa. Soc'y for Prevention of Cruelty to Animals*, No. 10-2003, 2012 WL 4932046, *10 (E.D. Pa. Oct. 17, 2012) (granting summary judgment on supervisory and *Monell* liability claims) (citing *City of Canton*, 489 U.S. at 389-90 (1989)).

[84] *Vargas v. City of Phila.*, 783 F.3d 962, 974 (3d Cir. 2015) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)).

[85] *Bean v. Ridley Twp.*, No. 14-5874, 2015 WL 568640, at *5 (E.D. Pa. Feb. 10, 2015) (citing *Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 125 (3d Cir. 2003)).

[86] *A.M. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

[87] *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)).

[88] (ECF Doc. No. 3, at ¶¶ 53-57, 62-71.)

[89] (*Id.* at 54.)

[90] (*Id.* at ¶ 63.)

[91] (*Id.* at ¶ 64.)

[92] (*Id.* at ¶ 65.)

[93] (*Id.* at ¶¶ 67, 69.)

[94] *See supra.*

[95] (*Id.* at ¶ 63.)

[96] The Court in *Canton* hypothesized a single-incident that would rise to the level of an official government policy for purposes of § 1983. 489 U.S. at 390, n.10.  However, Bamont has not argued this theory and, nonetheless, this single incident liability is only available in a "narrow range of circumstances" which we find not present here.  *See Bryan Cnty.*, 520 U.S. at 409.

[97] *Connick v. Thompson*, 563 U.S. 51, 52 (2011) (citation omitted).

[98] *Iqbal*, 556 U.S. at 678.

[99] *Bryan Cnty.*, 520 U.S. at 409.

[100] (ECF Doc. No. 3)

[101] *Mest v. Cabot Corp.*, 449 F.3d 502, 518 (3d Cir. 2006).

[102] *Id.* (citing *Wagner v. Anzon, Inc.*, 684 A.2d 570, 574 (Pa. Super. Ct. 1996)).

[103] *See supra*.

[104] *Kopka v. Bell Telephone Co. of Pa.*, 91 A.2d 232, 235 (Pa. 1952); *see also Liberty Place Retail Ass'n, L.P. v. Israelite School of Universal Practical Knowledge*, 102 A.3d 501, 507-08 (Pa. Super. Ct.) (finding that the defendant must be "substantially certain" that their actions would cause the third party to trespass, such as by "affirmatively direct[ing]" or coercing the third party to trespass).

[105] *Yates v. Commercial Index Bureau, Inc.*, 861 F. Supp. 2d 546, 551 n.5 (E.D. Pa. Apr. 24, 2012) (citing *Tagouma v. Investigative Consultant Servs., Inc.*, 4 A.3d 170, 174 (Pa. Super. Ct. 2010)).

[106] *Id.* at 552.

[107] *Id.* (citing *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989)).

[108] (ECF Doc. No. 10, at 19.)

[109] (*Id.*)

[110] (*Id.*)

[111] (ECF Doc. No. 3, at ¶ 93.)

[112] (*Id.*)

[113] *Francis J. Bernhardt III, P.C. v. Needleman*, 705 A.2d 875, 878 (Pa. Super. Ct. 1997) (citation omitted).

[114] *Snead v. Pa. Soc'y. For Prevention of Cruelty to Animals*, 929 A.2d 1169, 1183 (Pa. Super. Ct. 2007).

[115] The PSPCA claims to have returned the cats on September 1, 2014 and contends a "close reading of Count Thirteen reflects that the two cats referred to at Count Thirteen were returned to plaintiff on September 1, 2014 pursuant to court order." (ECF Doc. No. 10, at 20.) We disagree with the PSPCA's "close reading" and find the PSPCA's claim of return to be outside our scope of consideration at this point when we must confine ourselves to the allegations in the complaint. Further, as the PSPCA admits, damages are not a required element of conversion and thus Bamont may obtain nominal damages if she is able to prove the elements but cannot present acceptable evidence for fixing compensatory damages. *See Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 727 (Pa. 1964); *Carter v. May Dep't Store Co.*, 853 A.2d 1037, 1041-42 (Pa. Super. Ct. 2004). *See id.* (finding plausible conversion where PSPCA held dogs after charges were dropped).

[116] *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (citing *Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000)).

[117] 754 A.2d at 652.

[118] *Reedy*, 615 F.3d at 231; *Wardlaw v. Newsome*, No. 08-2536, 2015 WL 1312028, *2 (E.D. Pa. Mar. 23, 2015); *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005).

[119] *Swisher*, 868 A.2d at 1230.

[120] *Id.*

[121] *Wardlaw*, 2015 WL 1312028, *2 (quoting Field v. Phila. Elec. Co., 565 A.2d 1170, 1184 (Pa. Super. Ct. 1989)).

[122] *Kazatsky v. King David Mem'l Park Inc.*, 527 A.2d 988, 197 (Pa. 1987); *Martin v. City of Reading*, —F. Supp. 3d—, No. 12-3665, 2015 WL 4601120, *11 (E.D. Pa. July 31, 2015).

[123] *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 427 (E.D. Pa. 2000).

[124] *Halterman v. Tullytown Borough*, No. 10-7166, 2011 WL 2411020, *7 (E.D. Pa. June 14, 2011).

[125] *See Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (citing cases presenting "the most egregious conduct" sufficient to sustain an IIED claim); *see also Lei Ke v. Drexel Univ.*, No. 11-6708, 2013 WL 1092661, *13 (E.D. Pa. Mar. 14, 2013) ("Everyday annoyances, insults, and indignities do not rise to the requisite outrageousness." (citing *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1274-74 (3d Cir. 1979))).